# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Steven Miszkowicz and Connie Gipple, | ) | |
| | ) | |
| Debtors. | ) | Case No. 11 B 40844 |
| | ) | |
| | ) | |
| Philip V. Martino, not individually, but solely as Chapter 7 trustee, | ) ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 13 A 00927 |
| | ) | |
| v. | ) | |
| | ) | |
| Eugenia Marie Miszkowicz, an individual, Mark Miszkowicz, an individual, and Miszkowicz Investments Limited Partnership, | ) ) ) ) | Hon. Jacqueline P. Cox |
| | ) | |
| Defendants. | ) | |

## Amended Memorandum Opinion

This matter is before the Court for ruling on Plaintiff's Adversary Proceeding against Defendants Eugenia Miszkowicz, Mark Miszkowicz and Miszkowicz Investments Limited Partnership ("Defendants") for avoidance and recovery of $101,787 in transfers. For the reasons noted herein, Judgment will be entered in favor of the Plaintiff.

### I.    Jurisdiction and Procedure

The Court has jurisdiction to hear this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter involves a core proceeding under 28 U.S.C. § 157(b)(2)(F): an action to avoid and recover alleged preferential transfers. In *Stern v. Marshall*, the United States Supreme Court

recognized certain constitutional limitations on a bankruptcy court's authority to enter final orders. *Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011). Bankruptcy judges are precluded from entering final orders on state law claims that are not resolved in the process of ruling on a creditor's proof of claim. However, the claim at issue herein is not a counterclaim, nor is it one premised on state law. Rather, it involves an express bankruptcy provision, 11 U.S.C. § 547(b), which allows a trustee to avoid certain payments made by a debtor on the eve of bankruptcy. *See, e.g., Shurn v. Gilbert (In re Gulf Coast Glass & Erection Co., Inc.)*, 484 B.R. 685, 692 (Bankr. S.D. Texas 2013) (noting that preferential transfer claims are available only under bankruptcy law); *KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 905 (Bankr. N.D. Ill. 2012) (bankruptcy court may enter final orders on preference claims regardless of whether a proof of claim had been filed because the proceeding "stems from the bankruptcy itself."); *Reid v. Presbitero (In re First Choice Drywall, Inc.)*, 2012 WL 4471570, at **2-3 (Bankr. N.D. Ill. 2012) (After *Stern*, bankruptcy courts have constitutional authority to determine preference actions). *See also West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care)*, 465 B.R. 452, 463 (Bankr. S. D. Texas 2011), where the Court explained:

> The cause of action for preferential transfers is established by the Bankruptcy Code. The provision for recovering preferences is integrally bound up in the overall scheme for ensuring equitable distribution among creditors. Preferential transfers are payments for legitimate debts. Preferences are avoidable precisely because they enable some creditors to receive more than their fair distribution under the Bankruptcy Code. The entire purpose of the cause of action, then, is to enforce the Bankruptcy Code's equality of distribution. In this respect, preferential transfer actions are fundamentally different from fraudulent transfer actions, although the two causes of action superficially resemble.

Accordingly, the Court determines that it has the constitutional and statutory authority to enter a judgment order on Plaintiff's preference claims under 11 U.S.C. § 547(b).

## II. Discussion

### A. Facts and Background

The following facts are drawn from evidence heard at a June 19, 2014 trial, the parties' pleadings and this Court's June 16, 2014 Order Finding Material Facts Not in Dispute. (*See* Adversary Proceeding 13-927, dkt. no. 42.)

On October 7, 2011, (the "Petition Date") Steven Miszkowicz (the "Debtor") and his wife Connie Gipple (together, the "Debtors") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Philip V. Martino, the duly appointed Chapter 7 Trustee for the Debtors' bankruptcy estate, is the Plaintiff herein.

Defendant Eugenia Marie Miszkowicz, the mother of Debtor Steven Miszkowicz, is an insider of the Debtors pursuant to 11 U.S.C. §101(31)(A). (Stipulated Facts, ¶ 6, dkt. no. 34 – "Stipulated Facts.")

Defendant Mark Miszkowicz, the brother of Debtor Steven Miszkowicz, is an insider of the Debtors pursuant to 11 U.S.C. §101(31)(A)(i). (Stipulated Facts, ¶ 9.)

During the one-year insider preference period preceding the Petition Date (October 7, 2010 through October 7, 2011, the "Preference Period"), Debtor Steven Miszkowicz owned a limited partnership interest in Defendant Miszkowicz Investments Limited Partnership ("MILP"), an Arizona limited partnership and was one of its general partners. (Stipulated Facts, ¶ 15.)

Because Debtor Steven Miszkowicz was its general partner, MILP was an insider of the Debtors pursuant to 11 U.S.C. §101(31)(A)(ii). (Stipulated Facts, ¶ 5.)

During the Preference Period, Defendants Eugenia Miszkowicz and Mark Miszkowicz were general partners of Defendant MILP. (Stipulated Facts, ¶¶ 7, 10.)

#### 1. *The Loans*

Between 1984 and 2011, Defendants Eugenia Miszkowicz and Mark Miszkowicz made a series of loans ("Loan," and collectively, "Loans") to Debtor Steven Miszkowicz, totaling at least $100,000. (Stipulated Facts, ¶¶ 18-19) At least $65,000 of the Loans were made to the Debtor by his mother Eugenia Miszkowicz (Stipulated Facts, ¶ 20.); at least $35,000 were made to the

Debtor by his brother Mark Miszkowicz. (Stipulated Facts, ¶ 21.)

Only the Loan made on March 11, 1997 ("March Loan") was documented by a promissory note ("Note"). (Stipulated Facts, ¶ 23.)

On January 8, 2011, Debtor Steven Miszkowicz wrote to his brother, Defendant Mark Miszkowicz, requesting advances of $5,000 per month for three months. (Pl. Trial Ex. 27; Stipulated Facts, ¶ 25.) In the letter, Debtor requested that Defendant Mark Miszkowicz advance the funds with Debtor's MILP capital account as collateral. (Stipulated Facts, ¶ 26.)

Even though advances were requested, between January 10, 2011 and March 28, 2011, Defendant Mark Miszkowicz initiated wire transfers from his personal bank account totaling $35,000 to the Debtor to fund certain of the Loans, which the Answer refers to as "Undocumented Loan Transfers." (Answer, ¶ 49, dkt. no. 16.)

On March 25, 2011, Defendants Eugenia and Mark Miszkowicz set off the outstanding Loans against Debtor's capital account, which at the time had a balance of $101,787, to repay the Loans made to him by his brother and mother (the "Loan Transfers"). As a result, Debtor's MILP capital account was reduced to $0.00.[1] (Stipulated Facts, ¶¶ 44, 53; Answer ¶¶ 49, 58, 68, dkt. no. 16.)

On March 25, 2011, Debtor Steven Miszkowicz executed an "Assignment of Limited Partnership Interest" which transferred 75% of his interest in MILP to Defendant Eugenia Marie Miszkowicz and the remaining 25% to Defendant Mark Miszkowicz (the "Assignment Transfers" and together with Loan Transfers, the "Transfers"). (Pl. Trial Ex. 24.) According to disclosures made in MILP's 2010 federal tax return, the value of 75% of his capital account at the time of the Assignment Transfers was $76,340.25; the value of 25% of his capital account at the time of the Assignment Transfers was $25,446.75. (Stipulated Facts, ¶¶ 43, 44.)

---

[1] The parties stipulate that by setting off the outstanding Loans, Debtor's capital count was reduced to $0.00. It is unclear from the record, however, whether those funds remained with the partnership.

2. *The Adversary Proceeding*

On July 1, 2013, the Plaintiff initiated an Adversary Proceeding (the "Complaint") against the Defendants for avoidance and recovery of fraudulent and preferential transfers. In Plaintiff's first and second claims for relief, the Plaintiff seeks recovery on alternative preferential transfer theories: (1) that the Defendants received a preferential transfer when they set off the balance due them on the Loans against the value of Debtor's membership interest in MILP and (2) that the Defendants received a preferential transfer when they effectuated assignments of Debtor's membership interest in Miszkowicz Investments Limited Partnership ("MILP").

Defendants assert as an affirmative defense the ordinary course defense allowed under 11 U.S.C. § 547(c)(2). In support, they argue that the Transfers are not avoidable because they were not loans, but advances made from the MILP capital account in accordance with the MILP Partnership Agreement. To that end, the Defendants argue that to the extent that debts were incurred, they were incurred by Defendants Mark and Eugenia Miszkowicz "loaning" money to the Debtor on behalf of MILP. (Def. Tr. Brief, p. 5, dkt. no. 32.) The evidence shows that the Loans were made from funds in the personal bank accounts of Eugenia and Mark Miszkowicz. There are no documents evidencing indirect transfers from them on behalf of the partnership.

The Defendants also assert that the Loans were secured by Debtor's MILP capital account, and thus, were properly set off against the value of Debtor's MILP capital account, in accordance with the terms of the MILP Partnership Agreement ("Partnership Agreement"). This position has no support in the evidence of record. No security interests in the borrower's MILP capital account have been perfected.

In Plaintiff's third and fourth claims for relief, he alleges that the Transfers at issue are avoidable fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B) and under 740 ILCS 160/5(a)(1) and 160/8 of the Illinois Uniform Fraudulent Transfer Act. However, these claims were not pursued by the Plaintiff as the fraudulent transfer theories were not addressed in his final pre-trial brief or at trial.

### B.     Analysis of Section 547(b)(4)(B) Claim

11 U.S.C. § 547(b) provides that, subject to certain exceptions, the trustee may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made–
   (A) on or within 90 days before the date of filing of the petition; or
   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if–
   (A) the case were a case under chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

#### 1. Transfer of An Interest of the Debtor in Property

In *In re marchFirst, Inc.*, 2010 WL 4027723, at *5 (Bankr. N.D. Ill. Oct. 14, 2010), the Court observed that the phrase "an interest of the debtor in property" refers to "property that would have been 'property of the estate' had it not been transferred." "Generally, property belongs to the debtor for purposes of § 547 if its transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors." *Danning v. Bozek (In re Bullion Reserve of N. Am.)*, 836 F.2d 1214, 1217 (9th Cir. 1988).

This element of § 547 is not in dispute as the Defendants admit in their Answer that by setting off the Loans against Debtor Steven Miszkowicz's partnership interest in MILP and by receiving the Assignment Transfer of his interest in MILP, Defendants received transfers of property or funds belonging to Steven Miszkowicz in the amount of $101,789. (Answer, ¶¶ 44, 60.)

The Court finds that the transactions at issue were transfers of an interest of the debtor in

property under § 547(b).

## 2. The Transfers were Made for the Benefit of a Creditor on Account of An Antecedent Debt Owed by the Debtor Before Such Transfer was Made

Section 101(10) of the Bankruptcy Code provides that the term creditor means "(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A).

Defendants do not contest that they were creditors of Steven Miszkowicz before the Transfers were made. (Answer, ¶¶ 50, 59.) Defendants also admit that both the Loan Transfers and Assignment Transfers were made for or on account of an antecedent debt owed by a debtor to the Defendants. (Answer, ¶¶ 51, 61.) Accordingly, the Court determines that the § 547(b)(2) requirement that the transfers be made for the benefit of a creditor on account of an antecedent debt owed by the debtor is satisfied.

## 3. The Transfers were made while Debtors were insolvent

The Bankruptcy Code defines "insolvent" as follows:
(A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair evaluation, exclusive of–

> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> (ii) property that may be exempted from property of the estate under section 522 of this title.

11 U.S.C. § 101(32)(A).

The Debtors admit that during the one-year period preceding the Petition Date, or, the Preference Period, they were insolvent. (Stipulated Facts, ¶¶ 48-52.) Indeed, a review of the Debtors' Schedule F reveals that the amount of the Debtors' liabilities, $182,034.12, greatly exceeds the value of their assets, $ 5,640.31, during the Preference Period. (*See* Case No. 11-B-

40844, dkt. no. 1, p. 8.) Debtors' Schedule C discloses that the entire $5,640.31 has been claimed as exempt. (*See* Case No. 11-B-40844, p. 16.) Because the Debtors' liabilities during the one-year period preceding the Transfers far exceeded the value of their assets, the Court determines that the Debtors were insolvent at the time the Transfers were made.

### 4. The Transfers were made between 90 days and 1 year before the Petition Date

Section 547(b)(4)(A) of the Bankruptcy Code provides that the preference period for non-insiders is 90 days before the date on which a debtor files a petition seeking bankruptcy relief. Section 547(b)(4)(B) provides for avoidance of transfers made to an insider between 90 days and one year before the filing date. For individuals, 11 U.S.C. § 101(31)(A) of the Bankruptcy Code provides that "the term insider includes . . . relative of the debtor or of a general partner of the debtor." During the Preference Period, Defendant Mark Miszkowicz was the brother of Debtor Steven Miszkowicz. He was an insider as to Steven Miszkowicz within the meaning of § 101(31)(A). The applicable preference period is one year before the Petition Date. (Answer, ¶¶ 3, 5, 48, dkt. no. 16; Stipulated Facts, ¶¶ 8, 14, dkt. no. 34 .)

In their Answer, the Defendants acknowledge that the Assignment Transfer occurred on March 25, 2011 (Answer, ¶ 35, dkt. no. 16), which is within one year of Debtors' October 7, 2011 Petition Date. Defendants also admit that the set off transfer was made within one year of Debtors' October 7, 2011 Petition Date. (Answer, ¶ 43, dkt. no. 16.) Accordingly, the Trustee has established that the Transfers were made between 90 days and one-year before the filing of the petition.

### 5. Defendants Received More than They Would have if the Transfers Had Not Been Made.

The record in this case shows that absent recovery of the Transfers, creditors will not receive a distribution on claims filed against the Debtors' bankruptcy estate. (Stipulated Facts, ¶60.) Review of the Claims Registry reveals that the claims filed against the Debtors' estate total

$508,251.45, of which $5,490.30 are priority claims filed by the Internal Revenue Service.[2] (dkt. no. 24, Exhibit N, pp. 3-4, 9.) According to the Trustee's Affidavit (dkt. no. 24, Exhibit O), the preference claims herein are the only assets available for distribution to creditors of the Debtors' bankruptcy estate. The Trustee's recovery of the $101,787, minus the scheduled priority claims of $5,490.30, would yield $96,296.70 to pay general unsecured creditors, including the Defendants who would receive a pro rata distribution, rather than the $101,787 preference amount.

The Plaintiff has established that the Defendants received more than they would have if the Transfers had not been made.

### C. Claims for Relief Under Fraudulent Transfer Theories

In the Complaint, the Plaintiff also seeks avoidance of fraudulent transfers under §§ 548(a)(1)(A), 548(a)(1)(B) of the Bankruptcy Code and 740 ILCS 160/5(a)(1) and 160/8 of Illinois Uniform Fraudulent Transfer Act.

To prevail on a claim brought under § 548(a)(1)(A) and 740 ILCS 160/5 and 160/8, a plaintiff must prove that a transfer was made with actual intent to hinder, delay or defraud any entity to which the debtor was indebted.

Under § 548(a)(1)(B), the Bankruptcy Code's constructive fraudulent transfer provision, a trustee can avoid a transfer made for less than reasonably equivalent value if the debtor was insolvent at the time of the transfer, or became insolvent as a result of the transfer. A claim brought under this section does not include an intent to defraud element. *In re 4100 West Grand LLC*, 481 B.R. 444, 452 (Bankr. N.D. Ill. 2012).

The Plaintiff did not assert or address these theories of liability in his final pre-trial brief or at trial. The Court's October 23, 2013 Final Pretrial Order at paragraph 7 requires that all parties "(2) identify the legal issues in each count of each party's pleadings, and (3) provide a

---

[2]Section 726(a) of the Bankruptcy Code provides that property of the estate shall be distributed "(1) first . . . in the order specified in, section 507 [which provides for priority of payment] . . . ."

-9-

thorough and complete legal argument, with citations to relevant legal authorities, supporting the party's contentions on the merits." (*See* Adversary Proceeding 13-927, dkt. no. 21, p. 3.). The Final Pre-trial Order further provides that "failure to comply with the provisions of this order may result in waiver of claims or defenses, dismissal, default, exclusion or admission of evidence or other sanction, as justice may require." Due to the Plaintiff's failure to comply with this Court's Final Pre-trial Order, the fraudulent transfer theories alleged in his Complaint are hereby deemed waived.

### D. Affirmative Defense No. 1- Ordinary Course Defense to Preference Liability

The ordinary course exception to preference liability provided for at § 547(c)(2) of the Bankruptcy Code applies to transfers made in payment of a *debt* incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and the transfer was:

> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2)(A)-(B).

The ordinary course exception is meant to "'leave undisturbed normal commercial and financial relationships and protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of both the debtor and the debtor's transferee.'" *Kleven v. Household Bank, F.S.B.*, 334 F.3d 638, 642 (7th Cir. 2003) (citing *In re Armstrong*, 231 B.R. 723, 729 (Bankr. E.D. Ark. 1999)). The Defendants have the burden of proving by a preponderance of the evidence that the debts for which the Transfers were made were incurred in the ordinary course of business between the debtor and creditor. *In re Midway Airlines, Inc.*, 69 F.3d 792, 797 (7th Cir. 1995). *See also Kleven*, 334 F.3d at 642 ("The creditor has the burden of proving that the debtor's payment to it qualifies for this protection . . . .).

### 1. The Debt for Which the Transfers Were Made must have been Incurred in the Ordinary Course of Business or Financial Affairs of the Debtor and Transferee - 11 U.S.C. § 547(c)(2)

The first element of the ordinary course defense requires that the Defendants establish that the underlying debt for which the transfer was made was "incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee." This threshold requirement focuses on "when the debt was created and then whether the debt was created in the ordinary course." *Novak v. Eckman (In re Eckman)*, 447 B.R. 546, 550 (Bankr. N.D. Ohio 2010). In making this determination, courts examine "the normality of such incurrences in each party's business operations generally." *Speco Corp. v. Canton Drop Forge, Inc. (In re Speco Corp.)* 218 B.R. 390, 398 (Bankr. S.D. Ohio 1998).

In support of their ordinary course defense, the Defendants submit that the transfers at issue were not loans, but were advances made to the Debtor from his MILP capital account. However, Defendants' characterization of these transactions as advances rather than Loans is an attempt to distance themselves from judicial admissions previously made in their Answer to the Complaint. At paragraphs 43, 44 and 51 of the Answer, Defendants admitted that the transfers of funds to the Debtor were loans. (*See* Adversary Proceeding No. 13-927, dkt. no. 16.) On June 4, 2014, this Court issued an order striking portions of Defendants' Response to Plaintiff's Statement of Undisputed Fact that were inconsistent with the assertions made in their Answer. (*See* Order at dkt. no. 41 & attached chart of the Defendants' contradictions. Ex. A to Motion to Strike, 13-A-927, dkt. no. 37, pp. 9-11.) The Court rejects Defendants' assertion that the Transfers were advances.

In their brief, Defendants cite to the MILP Partnership Agreement which they claim allowed general partners to take draws against their capital account up to the value of that partner's capital account.[3] (Def. Trial Brief, p. 2, dkt. no. 32.) Defendants assert that MILP had

---

[3] Article XIV of the Partnership Agreement Provides:
The interest of any Limited Partner in this partnership may be terminated and such Limited Partner expelled from the partnership upon written notice by the General Partner if . . .

no assets which the Debtor could take out of his capital account, thus requiring them to use their personal funds on behalf of MILP. (Def. Trial Brief, p. 5, dkt. no. 32.) However, by Mark Miszkowicz's own admission, as general partner he had the authority to cash out MILP's U.S. Treasury bills, valued at $1.3 million, upon the bills' maturity date or issue a check from the account to fund any draws. Further undermining the Defendants' position is Mark Miszkowicz's admission that general partners were free to draw funds from their separate trust accounts representing accrued interest earned on the Treasury bills. Mark Miszkowicz testified that two other MILP general partners withdrew funds from such trust accounts.

Even if this Court were to accept the Defendants' assertion that liquid assets of MILP were unaccessible, the record in this case is devoid of any evidence establishing that the debts (or advances) were incurred in the ordinary course of the Defendants making loans to Debtor Steven Miszkowicz *on behalf of* MILP. What the evidence shows is that the transactions at issue were personal loans made among family members, not in their respective capacities as general partners of MILP.

The March 11, 1997 promissory note (the "Note") documenting the Debtor's agreement to repay his mother, Eugenia Miszkowicz, the sum of $50,000 at an interest rate of 7% per year makes no mention of MILP or Debtor's MILP capital account. Just three months after the March loan, Eugenia Miszkowicz loaned Steven Miszkowicz an additional $15,000, with no accompanying promissory note. She testified that she did not require him to execute a promissory note for the $15,000 Loan because "he was [her] son."

Some fourteen years later, in the January 8, 2011 letter, Steven Miszkowicz wrote to Mark Miszkowicz requesting "advances" of $5,000/month for three months. However, the letter gives no indication that those funds would be drawn from MILP assets. (Pl. Trial Ex. 27.) The letter notes that Debtor's interest in MILP would be used as collateral for the loans. However,

---

(e) whenever the credit balance of the Limited Partner's contributed capital account is smaller than the net debit balance in the Limited Partner's drawing account as increased or decreased by the Limited Partner's share of profits or losses for the partnership in that tax year to the date of expulsion, with the partner's share being based upon his or her percentage interest in the partnership.

(Pl. Trial Ex. 37, p. 12.)

the Court has not been shown evidence that Defendant Mark Miszkowicz perfected a security interest in Steven Miszkowicz's MILP interest to secure repayment of his obligations. The subsequent wire transfers totaling $35,000 to the Debtor, made between January 10, 2011 and March 28, 2011, were drawn on Mark Miszkowicz's personal bank account, rather than an MILP account. (Def. Trial Exs. 10-13.) The final wire transfer, dated March 28, 2011, was made from Mark Miszkowicz's personal account just four days after he received a letter from the Debtor indicating that he was required to pay $20,000 towards a state court judgment "or face 6 months in County [jail]." (Pl. Trial Ex. 36.) Nothing in this letter suggests that the request was made according to the ordinary course of business between the Debtor and MILP or that this type of request was a common occurrence between the parties. Rather, it is an atypical request made by Steven Miszkowicz to his brother in a last minute effort to avoid incarceration. In the Court's view, this activity does not support the Defendants' position that debts were incurred in the regular course of business or financial affairs between MILP and Debtor Steven Miszkowicz.

In addition to using non-partnership assets to fund the Loans, the Defendants did not report the Loans on MILP's 1065 tax returns for the years 2009-2011, nor was a reduction in the Debtor's MILP capital account reflected on any federal tax returns. (Pl. Trial Ex. 17-19; Stipulated Facts, ¶¶ 35-36; Deposition of Steven Miszkowicz, p. 89, Exhibit D (2 of 2) to dkt. no. 24.) Aside from the self-serving testimony of Mark Miszkowicz, the Defendants have not offered any corroborating evidence in support of their ordinary course defense. Given the familial nature of the transactions, much more in the way of evidence is required. As noted by another bankruptcy court in a case involving pre-petition loan payments on a loan from parents: "[T]he existence of a familial relationship between the Debtor and the Defendants, while not constituting an absolute fatal flaw, does not easily lend itself to an ordinary course defense. In this type of situation, a defendant seeking to raise an ordinary course defense, where a family member is involved, needs to offer some proof." *Eckman*, at 550. Given the sparse record in this case, the Court concludes that the Defendants have not sustained their burden of establishing that the debt was incurred in the ordinary course of business or financial affairs between the Debtor and any of the Defendants.

### 2  The Transfers in Payment of the Debt Must Have Been (i) Made in the Ordinary Course of Business or (ii) Made According to Ordinary Business Terms in the Creditors' Industry

Section 547(c)(2) requires that after showing that the *debt* was incurred in the ordinary course, the Defendants must establish that: (1) the *transfer* was made in the ordinary course of business of the parties or (2) that the *transfer* was made according to ordinary business terms in the creditor's industry. 11 U.S.C. §§ 547(c)(2)(A)-(B).

In determining whether a transaction was ordinary between the debtor and the creditor transferee, courts typically examine the following:

(1) the length of time the parties were engaged in the transaction at issue;
(2) whether the amount or form of tender differed from past practices;
(3) whether the debtor or creditor engaged in any unusual collection or payment activity; and
(4) whether the creditor took advantage of the debtor's deteriorating financial condition.

*Kleven*, 334 F.3d at 642.

Under this test, the court's focus is on "the specific relationship between the parties and the particular course of dealing between the parties." *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 390 (7th Cir. 1997).

However, because the Court finds that the Defendants have not satisfied the threshold requirement that the underlying debt of $101,787 be incurred in the ordinary course of business between the Debtor and the Defendants, it need not address whether the repayment transfers were made in the ordinary course of business of the parties or whether they were made according to ordinary business terms.

The Court rejects Defendants' ordinary course defense and determines that the Transfers are avoidable under § 547(b).

### E.  Affirmative Defense No. 2 - Good Faith Defense

The Defendants assert that the transfers they received were taken for value and in good faith. They argue that this is an exception to preference liability under § 548(c). That section states:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545 or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

The right to retain a lien on a transferred interest or to enforce the obligation incurred, to the extent that value was given in exchange to the debtor, does not apply to preferential transfers. The introductory language of § 548(c) excepts from the operation of the good faith and for value defense transfers voidable under section 544 (trustee as a lien creditor), section 545 (statutory liens) and section 547 (preferential transfers). The Transfers herein are avoidable preferences and as such are not covered by the statute.

### F.  Recovery of Avoided Transfers under 11 U.S.C. § 550

To the extent the court determines that a transfer is avoidable under § 547(b), the Bankruptcy Code provides that:

> [T]he trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.

11 U.S.C. § 550(a)(1).

Because the Court finds that the Transfers valued at $101,787 are avoidable under § 547(b), the Trustee is entitled to recover the amount of such transfers from the Defendants for the benefit of the Debtors' bankruptcy estate.

G.  **Disallowance of Defendants' Claim Under Section 502(d)**

Section 502(d) of the Bankruptcy Code provides that the court shall disallow any claim of any entity from which property is recoverable unless such entity has paid the amount, or turned over any such property for which such entity is liable. Having found herein that the Plaintiff may recover transfers under section 550, the Court finds that all claims filed to date or that may be filed in the future by the Defendants shall be disallowed until the Plaintiff recovers the transfers found to be preferential herein.

**III. Conclusion**

The Court determines that the Plaintiff met his burden by establishing by a preponderance of the evidence that the Transfers were preferential and subject to avoidance. The Defendants have failed to sustain their burden to establish the ordinary course defense. None of the Defendants were in the business of extending loans to Steven Miszkowicz and for that reason have failed to satisfy the threshold showing that the debts in issue were incurred in the ordinary course of either a business or their financial affairs, which includes consumer transactions. *See Eckman*, 447 B.R. at 550 (quoting *In re Winn*, 127 B.R. 697, 700 (Bankr. N.D. Fla. 1991)) (noting that the phrase "financial affairs" extends to consumer transactions "so as to 'include such nonbusiness activities as payment of monthly bills.'").

Judgment will be entered in favor of Plaintiff Trustee Philip V. Martino and against Defendant Eugenia Miszkowicz in the amount of $76,340.25. Judgment will be entered in favor of Plaintiff Trustee Philip V. Martino and against Defendant Mark Miszkowicz in the amount of $25,446.75. The Court notes that although the caption in this adversary proceeding names Miszkowicz Investments Limited Partnership as a defendant herein, the Court's finding that the Loan transactions at issue were made by Mark and Eugenia Miszkowicz in their individual capacities precludes a finding of liability against MILP. For that reason, the Court declines to enter judgment against MILP.

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate judgment order will be entered.

Dated: July 24, 2014             ENTER: *Jacqueline P. Cox*

                                                  Jacqueline P. Cox
                                                  U.S. Bankruptcy Judge